IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| **RONALD PENMAN AND** ) <br> **ADELANTE OIL & GAS, LLC,** ) <br> on behalf of themselves and a Class ) <br> of similarly situated royalty owners, ) <br> ) <br> **Plaintiffs** ) <br> ) <br> **v.** ) <br> ) <br> **HESS BAKKEN INVESTMENTS** ) <br> **II, LLC** ) <br> ) <br> **Defendant.** ) | **Civil Action No.: 22-cv-00097-DMT-CRH** |

# FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Ronald Penman, ("Penman") Adelante Oil and Gas, LLC ("Adelante") (collectively referred to as "Plaintiffs"), on behalf of themselves and the Subclasses defined below, file this class-action complaint ("Complaint") against Defendant Hess Bakken Investments II, LLC ("Hess"), and allege:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (a) Plaintiffs have brought this case as a class action; (b) the Subclasses proposed by Plaintiffs each exceed 100 members; (c) the proposed Subclasses each contain at least one Subclass member who is a citizen of a state different from the states where the Defendant is deemed to be a citizen; and (d) the amount in controversy on the claims of the proposed Subclass members exceeds the sum of $5,000,000, exclusive of interest and costs.

2.  This Court has personal jurisdiction over Hess because a substantial portion of the acts and conduct of Hess giving rise to the claims asserted in this class action occurred in the State of North Dakota.

3.  Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because a substantial part of Hess's conduct giving rise to the claims alleged in this class action occurred in this judicial district.

## PARTIES

4.  Adelante is a limited liability company organized under Colorado law, and its principal place of business is located at 969 ½ Main Ave., Durango, Colorado 81301. The managing member of Adelante is Michael Finney. Michael Finney is a resident and citizen of Colorado.

5.  Penman is a resident and citizen of the State of Colorado.

6.  Defendant Hess is a limited liability company organized under the laws of the State of Delaware, and its principal place of business is located at Hess Tower, 1501 McKinney Street, Houston, Texas 77010.

## CLASS DEFINITIONS

7.  Plaintiffs bring this class action on behalf of themselves and three proposed subclasses of similarly situated persons, defined as:

### SUBCLASS I

> All persons to whom Hess has paid royalties on oil produced from wells located in the State of North Dakota since May, 2012, under oil and gas leases which generally require the Lessee to deliver to the credit of Lessor, free of cost, in the pipeline to which Lessee may connect wells on said land, the equal [a specified percentage] of all oil produced and saved from the leased premises.

Excluded from Subclass I are: (a) the United States; (b) any person who has been a working interest owner in a well located in North Dakota on whose behalf Hess has paid royalties on oil or natural gas produced by Hess in North Dakota; and (c) Hess and its affiliated entities, and their respective employees, officers, and directors.

## SUBCLASS II

All non-excluded persons or entities owning mineral interests in North Dakota wells who: (1) received untimely payments from Hess for royalties associated with oil and gas production from North Dakota wells at any time since June 1, 2016; and (2) whose payments did not include the 18% interest required by law.

Excluded from the Class are: (1) Hess, its affiliates, predecessors, employees, officers, and directors; (2) agencies, departments, or instrumentalities of the United States of America or the State of North Dakota; and (3) mineral interests which are owned or managed by the board of university and school lands.

## SUBCLASS III

All persons to whom Hess has paid or was obligated to pay royalties on oil or natural gas produced from wells located in the State of North Dakota since May 2012 pursuant to an oil and gas lease or overriding royalty agreement where Hess's post-production expenses for gas were deducted from a royalty owner's oil royalties.

Excluded from Subclass III are: (a) the United States; (b) any person who has been a working interest owner in a well located in North Dakota on whose behalf Hess has paid royalties on oil or natural gas produced by Hess in North Dakota; and (c) Hess and its affiliated entities, and their respective employees, officers, and directors.

## FACTUAL ALLEGATIONS COMMON TO ALL SUBCLASSES

8. On March 10, 1949, Selmer Grimestad et al., as lessors, entered into an oil and gas lease with A. M. Fruh and Thomas W. Leach, as lessees, pertaining to leased premises located in the State of North Dakota (the "Adelante Lease").On November 5, 2011, Adelante acquired a portion of the lessor's interest in Adelante Lease. On information and belief, Hess acquired the

lessee's interests under the Adelante Lease in or around 2010 and has continued to own the lessee's interests under the Adelante Lease at all times since then.

9. On October 23, 2009, Ronald J. Penman, as lessor, entered into an oil and gas lease with TRZ Energy, LLC, as lessee, pertaining to leased premises located in the State of North Dakota (the "Penman Lease"). On information and belief, Hess acquired the lessee's interests under the Penman Lease in or around 2010 and has continued to own the lessee's interests under the Penman Lease at all times since then.

## SUBCLASS I FACTUAL ALLEGATIONS

10. The Adelante Lease contains a royalty provision in which the lessee agrees "[t]o deliver to the credit of the lessor, free of cost, in the pipeline to which lessee may connect wells on said land, the equal **One-Eighth (1/8th)** part of all oil produced and saved from the leased premises."

11. The Penman Lease contains a royalty provision in which the lessee agrees "[t]o deliver to the credit of the lessor, free of cost, in the pipeline to which lessee may connect wells on said land, the equal **Three-Sixteenths (3/16th)** part of all oil produced and saved from the leased premises."

12. At various times since Hess acquired its lessee's interests under the Adelante Lease and Penman Lease, Hess has produced and sold oil from wells subject to the Leases and has paid royalties to Plaintiffs on such oil production.

13. Under the applicable North Dakota law, the oil royalty provision contained in the Adelante Lease and Penman Lease has been interpreted to permit Hess to calculate and pay royalties based on the value of the oil at the well, including those post-production costs which are reasonable and not excessive.

4

14. At various times since May 2012, in calculating and paying royalties to Plaintiffs, Hess has deducted various post-production costs from the wellhead value on oil sales subject to the Adelante Lease and Penman Lease.

15. In its calculation and payment of royalties to Plaintiffs, Hess has improperly deducted from the sale price of the oil various unreasonable and excessive costs related to an assortment of mid-stream services, including, but not limited to, gathering, storing, transporting the oil from the well to a transportation pipeline, transporting the oil to a delivery point where the oil has been sold to third parties, administrative fees, and costs of marketing the oil for sale. Hess's improperly excessive deductions include instances where Hess itself and/or its affiliates, including, but not limited to, Hess Trading Corporation, Hess Midstream Operations LP, Hess Infrastructure Partners GP, LLC, and Hess Midstream Partners GP, LP, have provided the above-referenced mid-stream services, and Hess substantially profited from deducting these charges from Plaintiffs' royalties.

16. Hess's deduction of unreasonable and excessive costs in its calculation and payment of royalties to Plaintiffs on oil produced, and at times, its accompanying profits therefrom, is not permitted under the oil royalty provisions referenced in Paragraphs 10 and 11 of this Complaint and North Dakota law. Thus, Hess has materially breached its contractual obligations to Plaintiffs under the Adelante Lease and Penman Lease by taking such unreasonable or excessive deductions in its calculation and payment of royalties to Plaintiffs and by profiting thereby.

17. Plaintiffs have sustained substantial damages because of Hess's breaches of its contractual obligations to Plaintiffs under the Adelante Lease and Penman Lease.

18. In addition to Plaintiffs, each member of the proposed Subclass I has an interest in a lease which contains the same or similar oil royalty provision that is set forth in the Adelante

Lease and Penman Lease, and under which Hess owns or has owned the lessee's interest. Hess, in its calculation and payment of royalties on oil sales to the other members of Subclass I, has engaged in the exact same method of royalty accounting which it utilizes to pay royalties to Plaintiffs on oil sales, in that Hess has deducted from the sales price of the oil various unreasonable or excessive amounts of costs referenced in Paragraph 15 of this Complaint.

19.     Hess, in deducting the unreasonable and excessive amount of costs in its calculation of royalties paid to the Subclass I members on oil sales, has materially breached its contractual obligations to the Subclass I members under the leases described in the Subclass I definition set forth in Paragraph 7 of this Complaint.

20.     As a direct result of Hess's breaches of its contractual obligations to the members of Subclass I, the royalties owed to the Subclass I members have been substantially underpaid, and the Subclass I members have sustained substantial damages.

## SUBCLASS I CLASS ACTION ALLEGATIONS

21.     Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

22.     The proposed Subclass I, which consists of more than one thousand persons, is so numerous that joinder of all Subclass I members in this litigation is impracticable.

23.     There are questions of law or fact common to the claims of Subclass I members against Hess, including, but not limited to: (1) whether the amount of Hess's deduction of the above-referenced unreasonable and excessive costs in its calculation of royalties paid to the Subclass I members is a material breach of Hess's obligations to the Subclass I members under the leases at issue; and (2) the proper method for calculating the royalty underpayments resulting from

Hess's deduction of the above-referenced unreasonable and/or excessive costs from the sales price of the oil in its payment of royalties to the Subclass I members.

24.   Plaintiffs' claims against Hess are typical of the claims of the other Subclass I members against Hess.

25.   Plaintiffs will fairly and adequately protect the interests of the other Subclass I members regarding their claims against Hess.

26.   The questions of law or fact common to the members of Subclass I predominate over any questions affecting only individual members of Subclass I.

27.   A class action is superior to other available methods for fairly adjudicating this controversy.

## SUBCLASS II FACTUAL ALLEGATIONS

28.   Under North Dakota law, lessees under an oil and gas lease have a statutory obligation to pay interest on any royalty payments made more than 150 days after oil or gas is produced and marketed (hereinafter referred to as "Late Payments").

29.   N.D.C.C. § 47-16-39.1 provides:

> **If the operator** under an oil and gas lease **fails to pay oil or gas royalties** to the mineral owner or the mineral owner's assignee **within one hundred fifty days after oil or gas produced under the lease is marketed** . . . or if the operator fails to pay oil or gas royalties to an unleased mineral interest owner within one hundred fifty days after oil or gas production is marketed from the unleased mineral interest owner's mineral interest, **the operator thereafter shall pay interest on the unpaid royalties, without the requirement that the mineral owner** or the mineral owner's assignee request the payment of interest, **at the rate of eighteen percent per annum until paid . . .**

N.D.C.C. § 47-16-39.1 (emphasis added).

30.   The statute equally applies the 18% interest obligation to Late Payments made to both leased and unleased mineral owners.

7

31. Despite this clear statutory obligation, Hess has not automatically paid interest on Late Payments.

32. Plaintiffs own an interest in the oil and gas produced from numerous North Dakota oil and gas wells owned or operated by Hess.

33. Hess has consistently failed to pay royalties to Plaintiffs within 150 days from the date oil and gas was produced and marketed from wells operated by Hess and in which Plaintiffs own royalty interests.

34. When Hess eventually has paid royalties to Plaintiffs more than 150 days after the date when the oil and gas is marketed, Hess has not paid the 18% interest required by N.D.C.C § 47-16-39.1.

## SUBCLASS II CLASS ALLEGATIONS

35. Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

36. Upon information and belief, there are thousands of Subclass II members who are entitled to interest on Late Payments made by Hess, so that Subclass II is so numerous that joinder of all Subclass II members in this litigation is impracticable

37. The questions of fact and law common to Subclass II include:

   a. Whether Hess made any Late Payments to the Subclass II members; and

   b. Whether Hess's failure to pay interest to the Subclass II members on any Late Payments constitutes a violation of the N.D.C.C. § 47-16-39.1.

38. Plaintiffs' claims are typical of the claims of the other members of Subclass II because each of the Subclass II members' claims are identical.

39. Hess treated Plaintiffs and the other members of Subclass II in the same way by failing to pay the required interest on Late Payments.

40. Plaintiffs will fairly and adequately protect the interests of Subclass II. Plaintiffs are represented by counsel who are skilled and experienced in oil and gas matters, including oil and gas class actions.

41. The factual allegations and questions of law in this Class Action Complaint are common to the members of Subclass II and predominate over any questions affecting only individual members.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for five reasons:

   a. There is no reason why individual members of Subclass II would want to control the prosecution of their own claims at their own expense;

   b. To Plaintiffs' knowledge, there is no other pending litigation by any individual Subclass II member with the same scope of class membership sought in this Complaint against Hess relating to their failure to pay interest owed on Late Payments of oil and gas royalties as required by North Dakota law;

   c. All class members and the judiciary have a strong interest in resolving these matters in one forum without the need for multiple actions;

   d. The difficulties in managing this case as a class action will be slight in relation to the substantial benefits to be achieved on behalf of every Subclass II member through Class adjudication; and

   e. Absent a class action, Plaintiffs and the other Subclass II members may never fully discover the wrongful acts of Hess, the extent of their respective financial losses, or the financial benefit they are unwittingly providing to Hess.

## SUBCLASS III FACTUAL ALLEGATIONS

43. The Adelante Lease contains a gas royalty provision under which the Lessee agrees "[t]o pay Lessor **One-Eighth (1/8th)** of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being used off the premises, and if used in the manufacture of gasoline a royalty of **One-Eighth (1/8th)** payable monthly at the prevailing market rate for gas." The Adelante Lease also contains an oil royalty provision in which the lessee

9

agrees "[t]o deliver to the credit of the lessor, free of cost, in the pipeline to which lessee may connect wells on said land, the equal **One-Eighth (1/8th)** part of all oil produced and saved from the leased premises."

44. The Penman Lease contains a gas royalty provision under which the Lessee agrees "[t]o pay Lessor **Three-Sixteenths (3/16th)** of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being used off the premises, and if used in the manufacture of gasoline a royalty of **Three-Sixteenths (3/16th)** payable monthly at the prevailing market rate for gas." The Penman Lease also contains an oil royalty provision in which the lessee agrees "[t]o deliver to the credit of the lessor, free of cost, in the pipeline to which lessee may connect wells on said land, the equal **Three-Sixteenths (3/16th)** part of all oil produced and saved from the leased premises."

45. At various times since Hess acquired its lessee's interests under the Adelante Lease and Penman Lease, Hess has produced and sold both oil and gas from wells subject to the Adelante Lease and Penman Lease.

46. Hess's post-production costs for processing, compressing, and transporting the gas produced under wells subject to the Adelante Lease and Penman Lease have resulted in a negative gas royalty.

47. At various times since June 2012, in calculating and paying royalties to Plaintiffs on oil and gas produced from wells drilled subject to the Adelante Lease and Penman Lease, Hess has improperly deducted from Plaintiffs' oil royalties Hess's post-production costs for processing, compressing, and transporting the gas.

48. Hess's deduction of post-production costs associated with gas produced pursuant to the Adelante Lease and Penman Lease, in its calculation and payment of royalties to Plaintiffs

on oil produced pursuant to the Adelante Lease and Penman Lease, is not permitted under the oil or gas royalty provisions referenced in Paragraph 43 and 44 of this Complaint nor North Dakota law. Thus, Hess has materially breached its contractual obligations to Plaintiffs under the Adelante Lease and Penman Lease by deducting such post-production costs for gas in its calculation and payment of oil royalties to Plaintiffs.

49. Plaintiffs have sustained substantial damages because of Hess's breaches of its contractual obligations to Plaintiffs under the Adelante Lease and Penman Lease.

50. Like Plaintiffs, each of the other members of the proposed Subclass III has an interest in a lease which contains both an oil and gas royalty provision under which Hess owns or has owned the lessee's interest ("Subclass III Leases"). Hess, in its calculation and payment of royalties to the members of Subclass III on oil and gas produced under the Subclass III Leases, has engaged in the exact same method of royalty accounting which it utilizes to pay royalties to Plaintiffs on oil and gas, in that Hess has improperly deducted from the Subclass III members' oil royalties various post-production costs for gas referenced in Paragraph 47 of this Complaint.

51. Hess, in deducting the post-production costs for gas in its calculation of royalties paid to the Subclass III members on oil, has materially breached its contractual obligations to the Subclass III members under the Subclass III Leases.

52. As a direct result of Hess's breaches of its contractual obligations to the members of Subclass III, Hess has substantially underpaid the royalties owed to the Subclass III members, and the Subclass III members have sustained substantial damages.

## **SUBCLASS III CLASS ALLEGATIONS**

53. Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

54. The proposed Subclass III, which consists of more than one thousand persons, is so numerous that joinder of all Subclass III members in this litigation is impracticable.

55. There are questions of law or fact common to the claims of Subclass III members against Hess, including, but not limited to: (1) whether Hess's deduction of the above-referenced post-production costs for gas in its calculation of royalties paid to the Subclass III members on oil produced under the Subclass III members' leases is a material breach of Hess's obligations to the Subclass III members under the Subclass III Leases; and (2) the proper method for calculating the royalty underpayments resulting from Hess's deduction of the above-referenced post-production costs for gas in its payment of oil royalties to the Subclass III members.

56. Plaintiffs' claims against Hess are typical of the claims of the other Subclass IIII members against Hess.

57. Plaintiffs will fairly and adequately protect the interests of the other Subclass III members regarding their claims against Hess.

58. The questions of law or fact common to the members of Subclass III predominate over any questions affecting only individual members of Subclass III.

59. A class action is superior to other available methods for fairly adjudicating this controversy.

## SUBCLASS I FIRST CLAIM FOR RELIEF
(Breach of Contract)

60. The allegations contained in Paragraphs 1 through 59, inclusive, are restated and incorporated by reference herein.

61. Hess has breached its obligations to Plaintiffs and the other members of Subclass I under the leases at issue, in the manner described above.

62.     Plaintiffs and the other members of Subclass I have sustained substantial damages as a direct result of Hess's breaches of its royalty payment obligations to Plaintiffs and the other members of Subclass I under the leases at issue.

63.     Pursuant to N.D.C.C. § 47-16-39.1, Plaintiffs and the other members of Subclass I are entitled to recover prejudgment interest on the full amount of each royalty underpayment, at a rate of eighteen percent per annum, calculated from the date of each underpayment through the date of judgment.

### SUBCLASS I SECOND CLAIM FOR RELIEF
(Declaratory Judgment)

64.     The allegations contained in Paragraphs 1 through 63, inclusive, are restated and incorporated by reference herein.

65.     A controversy exists between the members of Subclass II and Hess regarding the correct method for Hess's calculation and payment of future royalties on oil sales under the leases at issue.

66.     Plaintiffs' request that the Court enter a declaratory judgment declaring that Hess has breached its royalty payment obligations to Plaintiffs and the other members of Subclass I under the leases at issue.

67.     Plaintiffs' request that the Court enter a declaratory judgment declaring that Hess is required to pay future royalties to Plaintiffs and the other members of Subclass I under the leases at issue without taking the deductions referenced in Paragraphs 14 and 15 of this Complaint.

### SUBCLASS II FIRST CLAIM FOR RELIEF
(Violation of Statutory Obligation to Pay Interest)

68.     The allegations set forth in paragraphs 1 through 67, inclusive, are restated and incorporated by reference herein.

69. Plaintiffs and the other members of Subclass II were legally entitled to their respective payment of royalties from Hess, for production from wells owned or operated by Hess in North Dakota.

70. N.D.C.C. § 47-16-39.1 requires Hess to pay royalties to mineral owners and royalty owners within 150 days of marketing the production of oil and gas subject to their oil and gas interests.

71. When Hess fails to pay owners within 150 days, N.D.C.C. § 47-16-39.1 requires Hess to pay owners 18% interest when the payment is eventually made.

72. Hess held oil and gas royalties belonging to Plaintiffs and the other members of Subclass II for more than 150 days from the day the oil and/or gas was produced and marketed, and thereby failed to timely pay these royalties to Plaintiffs and the other members of Subclass II.

73. When Hess eventually paid these royalties to Plaintiffs and the other members of Subclass II, it did not pay the 18% interest required by N.D.C.C. § 47-16-39.1.

74. Hess's failure to pay interest owed on the untimely payments has harmed Plaintiffs and the other members of Subclass II.

75. Pursuant to N.D.C.C. § 47-16-39.1, Plaintiffs and the other members of Subclass II are entitled the 18% interest for all oil and gas royalty payments made more than 150 days after oil and gas produced and marketed from Subclass II Leases, and entitled to recover prejudgment interest on the full amount of the unpaid interest for each well, at a rate of eighteen percent per annum, calculated from the date each interest payment was first due, through the date of judgment.

### **SUBCLASS III FIRST CLAIM FOR RELIEF**
(Breach of Contract)

76. The allegations contained in Paragraphs 1 through 75, inclusive, are restated and incorporated by reference herein.

77.     Hess has breached its obligations to Plaintiffs and the other Subclass III members under the Subclass III Leases, in the manner described above.

78.     Plaintiffs and the other members of Subclass III have sustained substantial damages as a direct result of Hess's breaches of its royalty payment obligations to Plaintiffs and the other members of Subclass III under the Subclass III Leases.

79.     Pursuant to N.D.C.C. § 47-16-39.1, Plaintiffs and the other members of Subclass III are entitled to recover prejudgment interest on the full amount of each royalty underpayment, at a rate of eighteen percent per annum, calculated from the date of each underpayment through the date of judgment.

## PRAYER FOR RELIEF

Plaintiffs pray for the following relief:

1.      An Order finding that the claims asserted by Plaintiffs on behalf of the defined Subclasses should be certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3), that Plaintiffs be appointed as the Class Representatives for their respective certified Subclasses, and that Plaintiffs' attorneys be appointed as Class Counsel for the certified Subclasses;

2.      A judgment in favor of Plaintiffs and the members of the Subclasses on their claims for Hess's breaches of the leases at issue, for the full amount of royalty underpayments based on Hess's improper deduction of unreasonable or excessive deductions, and on their claim for losses sustained as a direct, proximate, and producing cause of Hess's failure to pay interest on untimely royalty payments as required by law, plus applicable prejudgment interest pursuant to N.D.C.C. § 47-16-39.1;

3. A declaratory judgment declaring the appropriate method for Hess's calculation of future royalties on oil sales under the leases at issue, in accordance with the relief prayed for by Plaintiffs in Paragraph 67 of this Class Action Complaint;

4. An award of attorneys' fees pursuant to N.D.C.C. § 47-16-39.1; and as otherwise may be available under applicable law.

5. For such additional relief as may be just.

## DEMAND FOR JURY TRIAL

Plaintiffs and the other members of Subclasses I, II, and III request a jury trial on all triable issues.

Dated:  June 22, 2022

BARTON AND BURROWS, LLC

By: /s/ *George A. Barton*_____
George A. Barton Mo. Bar No. 26249
Stacy A. Burrows Co. Bar No. 49199
5201 Johnson Drive, Ste. 110
Mission, KS 66205
(913) 563-6250
George@bartonburrows.com
Stacy@bartonburrows.com

and

VOGEL LAW FIRM

By: */s/ Joshua A. Swanson*_____
Joshua A. Swanson, ND Bar No. 06788
Robert B. Stock, ND Bar No. 05919
218 NP Avenue
Fargo, ND 58102
(701) 237-6983
jswanson@vogellaw.com

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS**