# EXHIBIT A



WILLIAMS COUNTY, ND

Page: 1 of 3
11/20/2009 10:52 A
OGL      $17.00

# OIL AND GAS LEASE

Mod-Producers 88-PAID UP
Rev. 5-60 No. 2 (modified)

AGREEMENT, Made and entered into this **23rd** day of **October**, 2009, by and between **Ronald J. Penman, a married man dealing in his sole and separate property**, whose address is **24751 Rd S, Dolores, CO 81323**, hereinafter called Lessor (whether one or more) and **TRZ Energy LLC** whose address is **1050 17th Street, Suite 975, Denver, CO 80265** hereinafter called Lessee:

WITNESSETH, That the Lessor, for and in consideration of **Ten Dollars and more ($10.00+)** cash in hand paid, the receipt of which is hereby acknowledged, and the covenants and agreements hereinafter contained, has granted, demised, leased and let, and by these presents does grant, demise, lease and let exclusively unto the said Lessee, the land hereinafter described, with the exclusive right for the purpose of mining, exploring by geophysical and other methods, and operating for and producing therefrom oil and all gas, of whatsoever nature or kind, with rights of way and easements for laying pipe lines, and erection of structures thereon to produce, save and take care of said products, all that certain tract of land being situated in the County of **Williams**, State of **North Dakota**, described as follows, to-wit:

**Township 153 North, Range 98 West, 5th PM**
Section 5: N/2SW/4
Section 6: N/2SE/4
Section 7: S/2NE/4, SE/4
Section 9: W/2, NE/4, NE/4SE/4, S/2SE/4, NW/4SE/4
Section 10: SW/4SW/4
Section 17: NE/4, SE/4NW/4

See Exhibit "A" Attached Hereto and Made A Part Hereof.

containing **1120.00** acres, more or less.

1. It is agreed that this lease shall remain in force for a term of **Four (4)** years from **October 23, 2009** and as long thereafter as oil or gas of whatsoever nature or kind is produced from said leased premises or on acreage pooled therewith, or drilling operations are continued as hereinafter provided. If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises or on acreage pooled therewith but Lessee is then engaged in drilling or re-working operations thereon, then this lease shall continue in force so long as operations are being continuously prosecuted on the leased premises or on acreage pooled therewith, and operations shall be considered to be continuously prosecuted if not more than ninety (90) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well. If after discovery of oil or gas on said land or on acreage pooled therewith, the production thereof should cease from any cause after the primary term, this lease shall not terminate if Lessee commences additional drilling or re-working operations within ninety (90) days from date of cessation of production or from date of completion of dry hole. If oil or gas shall be discovered and produced as a result of such operations at or after the expiration of the primary term of this lease, this lease shall continue in force so long as oil or gas is produced from the leased premises or on acreage pooled therewith.

2. This is a PAID-UP LEASE. In consideration of the cash down payment, Lessor agrees that Lessee shall not be obligated, except as otherwise provided herein, to commence or continue any operations during the primary term. Lessee may at any time or times during or after the primary term surrender this lease as to all or any portion of said land and as to any strata or stratum by delivering to Lessor or by filing for record a release or releases, and be relieved of all obligation thereafter accruing as to the acreage surrendered.

3. In consideration of the premises the said Lessee covenants and agrees:
   1st. To deliver to the credit of Lessor, free of cost, in the pipeline to which Lessee may connect wells on said land, the equal **Three-Sixteenths (3/16th)** part of all oil produced and saved from the leased premises.
   2nd. To pay Lessor **Three-Sixteenths (3/16th)** of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being used off the premises, and if used in the manufacture of gasoline a royalty of **Three-Sixteenths (3/16th)** payable monthly at the prevailing market rate for gas.
   3rd. To pay Lessor for gas produced from any oil well and used off the premises or in the manufacture of gasoline, or any other product a royalty of **Three-Sixteenths (3/16th)** of the proceeds, at the mouth of the well, payable monthly at the prevailing market rate.

4. If, at the expiration of the primary term or at any time or times thereafter there is any well on the leased premises either capable of producing oil or gas then this lease shall not terminate so long as such well is shut in. For each such well, Lessee shall pay or tender to Lessor or Lessor's successor or assigns One Dollar per year per net mineral acre retained hereunder, such payment or tender to be made on or before the anniversary date of this lease next ensuing after the expiration of 90 days from the date such well is shut in and thereafter on or before the anniversary date of this lease during the period such well is shut in. Lessee's failure to pay or tender, or properly pay or tender, any such sum shall render Lessee liable for the amount due but it shall not operate to terminate the lease.

5. If said Lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties (including any shut-in gas royalty) herein provided for shall be paid the said Lessor only in proportion which Lessor's interest bears to the whole and undivided fee.

6. Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for Lessee's operation thereon, except water from the wells of Lessor.

7. When requested by Lessor, Lessee shall bury Lessee's pipe line below plow depth.

8. No well shall be drilled nearer than 200 feet to the house or barn now on said premises without written consent of Lessor.

9. Lessee shall pay for damages caused by Lessee's operations to growing crops on said land.

10. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

11. The rights of Lessor and Lessee hereunder may be assigned in whole or part. No change in ownership of Lessor's interest (by assignment or otherwise) shall be binding on Lessee until Lessee has been furnished with notice, consisting of certified copies of all recorded instruments or documents and other information necessary to establish a complete chain of record title from Lessor, and then only with respect to payments thereafter made. No other kind of notice, whether actual or constructive, shall be binding on Lessee. No present or future division of Lessor's ownership as to different portions or parcels of said land shall operate to enlarge the obligations or diminish the rights of Lessee, and all Lessee's operations may be conducted without regard to any such division. If all or any part of this lease is assigned, no leasehold owner shall be liable for any act or omission of any other leasehold owner.

12. Lessee, at its option, is hereby given the right and power at any time and from time to time as a recurring right, either before or after production, as to all or any part of the land described herein and as to any one or more of the formations hereunder, to pool or unitize the leasehold estate and the mineral estate covered by this lease with other land, lease or leases in the immediate vicinity for the production of oil and gas, or separately for the production of either, when in Lessee's judgment it is necessary or advisable to do so, and irrespective of whether authority similar to this exists with respect to such other land, lease or leases. Likewise, units previously formed to include formations not producing oil or gas, may be reformed to exclude such non-producing formations. The forming or reforming of any unit shall be accomplished by Lessee executing and filing of record a declaration of such unitization or reformation, which declaration shall describe the unit. Any unit may include land upon which a well has theretofore been completed or upon which operations for drilling have theretofore been commenced. Production, drilling or reworking operations or a well shut in for want of a market anywhere on a unit which includes all or a part of this lease shall be treated as if it were production, drilling or reworking operations or a well shut in for want of a market under this lease. In lieu of the royalties elsewhere herein specified, including shut-in gas royalties, Lessor shall receive on production from the unit



**676959**
Page: 2 of 3
11/20/2009 10:52 A
OGL        $17.00

WILLIAMS COUNTY, ND

so pooled royalties only on the portion of such production allocated to this lease; such allocation shall be that proportion of the unit production that the total number of surface acres covered by this lease and included in the unit bears to the total number of surface acres in such unit. In addition to the foregoing, Lessee shall have the right to unitize, pool or combine all or any part of the above described lands as to one or more of the formations thereunder with other lands in the same general area by entering into a cooperative or unit plan of development or operation approved by any governmental authority and, from time to time, with like approval, to modify, change or terminate any such plan or agreement, and in such event, the terms, conditions and provisions of this lease shall be deemed modified to conform to the terms, conditions, and provisions of such approved cooperative or unit plan of development or operation and, particularly, all drilling and development requirements of this lease, express or implied, shall be satisfied by compliance with the drilling and development requirements of such plan or agreement, and this lease shall not terminate or expire during the life of such plan or agreement. In the event that said above described lands or any part thereof, shall hereafter be operated under any such cooperative or unit plan of development or operation whereby the production therefrom is allocated to different portions of the land covered by said plan, then the production allocated to any particular tract of land shall, for the purpose of computing the royalties to be paid hereunder to Lessor, be regarded as having been produced from the particular tract of land to which it is allocated and not to any other tract of land; and the royalty payments to be made hereunder to Lessor shall be based upon production only as so allocated. Lessor shall formally express Lessor's consent to any cooperative or unit plan of development or operation adopted by Lessee and approved by any governmental agency by executing the same upon request of Lessee.

13. All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules or Regulations, and this lease shall not be terminated, in whole or in part, nor Lessee held liable in damages, for failure to comply therewith, if compliance is prevented by, or if such failure is the result of, any such Law, Order, Rule or Regulation.

14. Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the Lessee shall have the right at any time to redeem for Lessor, by payment, any mortgages, taxes or other liens on the above described lands, in the event of default of payment by Lessor and be subrogated to the rights of the holder thereof, and the undersigned Lessors, for themselves and their heirs, successors and assigns, hereby surrender and release all right of dower and homestead in the premises described herein, insofar as said right of dower and homestead may in any way affect the purposes for which this lease is made, as recited herein.

15. Should any one or more of the parties hereinabove named as Lessor fail to execute this lease, it shall nevertheless be binding upon all such parties who do execute it as Lessor. The word "Lessor," as used in this lease, shall mean any one or more or all of the parties who execute this lease as Lessor. All the provisions of this lease shall be binding on the heirs, successors and assigns of Lessor and Lessee.

IN WITNESS WHEREOF, this instrument is executed as of the date first above written.

_____
Ronald J. Penman, a married man dealing
in his sole and separate property


**ACKNOWLEDGMENT**

STATE OF Colorado }
                  } ss:
COUNTY OF Montezuma }

BE IT REMEMBERED, That on this 29 day of October, 2009, before me, a Notary Public in and for said County and State, personally appeared, **Ronald J. Penman, a married man dealing in his sole and separate property**, known to me to be the identical person(s) described in and who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first written above.

_____
Notary Public

ERIN GOAD
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires 03/19/2012
SEAL

Residing at: 1438 E. Main Cortez Co 81321

My Commission Expires: 9/19/2012

When recorded, return to:
LoneTree Energy & Associates, LLC
141 Union Boulevard, Suite 260
Lakewood, CO 80228

EXHIBIT "A"

Attached to and made a part of that certain Oil and Gas Lease dated October 23, 2009 by and between between <u>Ronald J. Penman, a married man dealing in his sole and separate property</u>, whose address is <u>24751 Rd S, Dolores, CO 81323</u>, hereinafter called Lessor (whether one or more) and <u>TRZ Energy LLC</u> whose address is <u>1050 17th Street, Suite 975, Denver, CO 80265</u> hereinafter called Lessee.

<u>Township 153 North, Range 98 West, 5th PM</u>
Section 5: N/2SW/4
Section 6: N/2SE/4
Section 7: S/2NE/4, SE/4
Section 9: W/2, NE/4, NE/4SE/4, S/2SE/4, NW/4SE/4
Section 10: SW/4SW/4
Section 17: NE/4, SE/4NW/4

containing <u>1120.00</u> acres, more or less.

1) This lease shall terminate at the end of the primary term as to all of the leased premises except those included within a production or spacing unit prescribed by law or administrative authority on which is located a well producing oil and/or gas and for which Lessor is receiving royalty payments, unless lessee is then engaged in drilling or reworking operations in accordance with the provisions of this lease. In the event that lessee is engaged in said drilling or reworking operations at the expiration of the primary term, the lease shall remain in full force and effect as to all the leased premises so long as a continuous drilling program is maintained whereby not more than 120 days shall elapse from the completion or abandonment of drilling or completion operations upon the last well to the commencement of another well. Upon failure to maintain said continuous drilling program, this lease shall then automatically terminate as to such nonproductive part of the leased premises as provided above.

2) No well shall be shut-in and perpetuate this lease for more than twenty-four (24) months beyond primary term; actual production and payment on production shall be required after such period to perpetuate this lease.

Signed for identification this  Oct 29  day of  09 , 2009.

_Ronald J. Penman_
Ronald J. Penman, a married man dealing
in his sole and separate property

When recorded, return to:
LoneTree Energy & Associates, LLC
141 Union Boulevard, Suite 260
Lakewood, CO 80228

COUNTY RECORDER, WILLIAMS COUNTY, ND    11/20/2009 10:52
I certify that this instrument was filed and recorded
Kari Evenson, County Recorder
by _Keri Hauge_ deputy    676959

676959
Page: 3 of 3
WILLIAMS COUNTY, ND    11/20/2009 10:52 A
OGL    $17.00