IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| RONALD PENMAN and ADELANTE OIL & GAS, LLC, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 22-cv-00097-DMT-CRH |
| v. | ) ) |
| HESS BAKKEN INVESTMENTS II, LLC, | ) ) |
| Defendant. | ) ) |

**HESS'S REPLY IN SUPPORT OF
MOTION TO DISMISS**

Plaintiffs' Opposition underscores that their Complaint fails to meet the basic requirements of the federal notice pleading standard. Plaintiffs effectively concede that the Complaint makes only generalized and conclusory allegations, arguing merely that they "are not required to allege specific facts or examples." Opp. 8. That is wrong: A complaint is insufficient if it does no more than "tender[] 'naked assertion[s]' devoid of 'further factual enhancement,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a court need not accept as true a plaintiff's "legal conclusions," "[t]hreadbare recitals of the elements of a cause of action," or "conclusory statements," *id*. at 678–80. Because the Complaint fails to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests'"—the "essential function of notice pleading"—it must be dismissed. *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins.*, 897 F.3d 987, 992–93 (8th Cir. 2018) (emphasis omitted).

    **I.**    **The Subclass I Claims Should Be Dismissed.**

Plaintiffs do not deny that despite alleging that Hess deducted unreasonable post-production costs from oil royalties owed to Plaintiffs, the Complaint does not identify a single

purportedly unreasonable deduction—much less identify what makes the deduction unreasonable in Plaintiffs' view. This is basic information that is required, and only fair to provide, to give the defendant a fair opportunity to respond to the dispute. Here, Plaintiffs' brief acknowledges (at p. 4) that Hess "can deduct reasonable post-production costs" that are "reasonable and not excessive." And as Hess explained in its motion, Plaintiffs' assertion that Hess deducted "unreasonable and excessive costs," Compl. ¶ 15, is a quintessential conclusory assertion. Plaintiffs generally discuss "an assortment of mid-stream services," Compl. ¶ 15, *i.e.*, "gathering, storing, transporting, administrative fees, and marketing," Opp. 3–4, but they do not identify any specific instance in which Hess allegedly charged unreasonable costs in any of those categories, much less identify what about a given deduction was unreasonable. Indeed, the broad categories of midstream services listed by Plaintiffs encompass nearly the universe of post-production costs that might be incurred with respect to oil production. Alleging that Hess has taken unreasonable deductions "related to an assortment of mid-stream services, including, but not limited to," these categories, Compl. ¶ 15, is the functional equivalent of a generic allegation that Hess's deductions are somehow unreasonable. This is especially problematic given that North Dakota law expressly allows several of those categories to be listed on royalty statements. N.D.A.C. § 43-02-06-01(7) (providing that deductions are to be "identified as transportation, processing, compression, or administrative costs"). Plaintiffs cannot state a claim that such deductions are *unreasonable* simply by asserting that Hess has reported such deductions.

Plaintiffs have no response for Hess's observation that they assert only that certain unspecified deductions have occurred "[a]t various times since May 2012," Compl. ¶ 14, a *ten-year* timespan. Allegations that cover such a broad timespan must specify when and how frequently the defendant has allegedly acted unlawfully. Indeed, it is precisely allegations like

2

these that the Supreme Court has identified as failing to satisfy federal pleading standards. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 n.10 (2007) ("Apart from identifying a 7-year span in which the § 1 violations were supposed to have occurred … the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies. … [A] defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin."); *see also Moreno v. San Francisco Area Rapid Transit Dist.*, Case No.17-cv-02911-JSC, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) ("plaintiffs' allegations were not sufficiently detailed with respect to . . . how and how often" data was allegedly unlawfully collected when plaintiff only alleged the data was collected "at periodic intervals"); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 973 (N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017) (dismissing complaint that alleged defendants tracked a vehicle's driving history, performance, or location "at various times" without specifying "the frequency of which the data is being tracked").

Nor can the bare allegation that Hess's deductions arose from affiliate transactions save the Complaint. On that point, Plaintiffs rely on inapposite caselaw from "marketable product" jurisdictions such as Oklahoma and West Virginia, while ignoring controlling North Dakota precedent to the contrary. In *Bice v. Petro-Hunt, L.L.C.*, the North Dakota Supreme Court approved the "work-back" method to value production at the well, where the defendant lessee deducted from royalties certain post-production costs incurred at an *affiliated* gas plant. 768 N.W.2d 496, 499, 502 (N.D. 2009). Contrary to Plaintiffs' argument, neither *Bice* nor any North Dakota precedent holds that affiliate costs are "presumably unreasonable," nor do Plaintiffs cite authorities from jurisdictions with similar law. Rather, *Bice* identified Oklahoma and West Virginia as "first marketable product" jurisdictions that have rejected the "at the well" rule, and

3

the Court expressly rejected the "first marketable product" doctrine that they employ.[1]  *Id.* at 501–02.  Moreover, *Bice* affirmed a summary judgment ruling that depreciation charges on the affiliated gas plant were commercially reasonable.  *Id.* at 504–06.   Whatever the rule may be in Oklahoma or West Virginia, under North Dakota law a plaintiff must allege something more than the bare existence of an affiliate transaction to state a claim that a cost is unreasonably high.

Plaintiffs devote most of their section on the Subclass I Claims to the assertion that deductions must be reasonable, Opp. 4–5, but that entirely misses the point.  Plaintiffs' problem is a *pleading* problem—they allege merely that some unspecified and unquantified instances within broad categories of costs were "unreasonable," and those are simply "legal conclusions" that cannot be credited on a motion to dismiss, *Iqbal*, 556 U.S. at 678.  Plaintiffs' "'naked assertion[s]' devoid of 'further factual enhancement,'" *id.*, are insufficient to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'" *Twombly*, 550 U.S. at 555.

**II.     The Subclass II Claims Should Be Dismissed.**

Plaintiffs do not deny that despite alleging that Hess did not pay Plaintiffs statutory interest for purported late payments, the Complaint does not identify a single late payment—much less identify a deficiency in statutory interest.  After quoting North Dakota Century Code § 47-16-39.1, Plaintiffs state merely that Hess has "failed to pay royalties to Plaintiffs within 150 days from the date oil and gas was produced" and "has not paid the 18% interest required by N.D.C.C. § 47-16-39.1."  Compl. ¶ 33–34.  Yet again, that is exactly what the Supreme Court prohibited in *Twombly* and *Iqbal*—a "recital[] of the elements of a cause of action" followed by "an unadorned, the-

---

[1] Because the first marketable product doctrine "requires the lessee to pay any costs incurred in turning the unmarketable gas into a marketable product," *Bice*, 768 N.W.2d at 501, whether a sale to an affiliated entity can establish the point of marketability or otherwise be used to calculate royalty payments has been a frequent topic of litigation in jurisdictions that follow the marketable product doctrine.

4

defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Plaintiffs do not identify a single instance of a late payment, nor a single instance of an underpayment of interest. Plaintiffs do not even identify whether the alleged late payments involved oil, gas, or both.

Plaintiffs' only response (at p. 7) is that they "are not required to provide 'specific facts' or examples where Hess Bakken failed to pay the required statutory interest." But the caselaw they cite for that proposition quotes *Twombly*, which makes clear that "a conclusory allegation of [unlawful conduct] at some unidentified point does not supply facts adequate to show illegality," 550 U.S. at 557. It is simply not enough to allege that Hess did not comply with N.D.C.C. § 47-16-39.1—that "legal conclusion[]" cannot be credited on a motion to dismiss. *Iqbal*, 556 U.S. at 678.

### III.     The Subclass III Claims Should Be Dismissed.

Plaintiffs do not deny that despite alleging that Hess has netted gas costs against oil royalties, the Complaint does not identify a single instance of that happening. Instead, they simply assert again (at p. 8) that they "are not required to allege specific facts or examples." That assertion is wrong with respect to the Subclass III Claims for the same reasons it is wrong with respect to the Subclass II Claims. Plaintiffs' "'naked assertion[s]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678, are insufficient to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'" *Twombly*, 550 U.S. at 555. The Court should dismiss the Subclass III Claim as well.

## CONCLUSION

For the foregoing reasons, Hess respectfully requests that the Court dismiss the Complaint.

Dated: September 7, 2022

Respectfully submitted,

*/s/ Paul J. Forster*
Paul J. Forster (ND ID #07398)
Zachary R. Eiken (ND ID #07832)
CROWLEY FLECK PLLP
100 W. Broadway, Suite 250
P.O. Box 2798
Bismarck, ND 58502-2798
(701) 223-6585
(701) 222-4853
pforster@crowleyfleck.com
zeiken@crowleyfleck.com

Daniel T. Donovan, P.C.
Ragan Naresh, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
(202) 389-5200
daniel.donovan@kirkland.com
ragan.naresh@kirkland.com

*Attorneys for Defendant*
*Hess Bakken Investments II, LLC*

6