# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Ronald Penman and<br>Adelante Oil & Gas, LLC,<br>on behalf of themselves and a class of<br>similarly situated royalty owners,<br><br>    Plaintiffs,<br><br> vs.<br><br>Hess Bakken Investments II, LLC,<br><br>    Defendant. | **ORDER GRANTING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Case No. 1:22-cv-097 |
| Sandy River Resources, LLC, and<br>Sandy River Energy, LLC,<br>on behalf of themselves and classes of<br>similarly situated royalty owners,<br><br>    Plaintiffs,<br><br> vs.<br><br>Hess Bakken Investments II, LLC,<br><br>    Defendant. | Case No. 1:22-cv-108 |

Before the Court is the Defendant's motion to strike class allegations filed on March 28, 2024. See Doc. No. 38. The Plaintiffs filed a response in opposition to the motion on April 22, 2024. See Doc. No. 42. The Defendant filed a reply on April 29, 2024. See Doc. No. 46. The Plaintiffs filed a sur-reply on June 25, 2024. See Doc. No. 54. The Defendant filed a response to the Plaintiffs' sur-reply on July 2, 2024. See Doc. No. 56. For the reasons set forth below, the motion to strike class allegations is granted.

1

**I.      BACKGROUND**

The Defendant, Hess Bakken Investments II, LLC, ("Hess"), operates numerous oil and gas wells in North Dakota. As the operator of those wells, Hess produces and markets oil, gas, and related hydrocarbons. Hess then remits sales proceeds to parties who own interests in a given well, including royalty owners who are entitled to a share of production under an oil and gas lease. The Plaintiffs own interests in oil and gas produced from wells Hess operates in North Dakota.

On June 10, 2022, Ronald Penman and Adelante Oil & Gas, LLC brought an action on behalf of themselves and a class of similarly situated royalty owners. See Doc. No. 1. Hess filed a motion to dismiss on August 4, 2022. See Doc. No. 7. The motion was denied on March 23, 2023. See Doc. No. 11. On June 28, 2022, Sandy River Resources, LLC and Sandy River Energy, LLC (collectively "Sandy River"), brought an action on behalf of themselves and classes of similarly situated royalty owners. See Doc. No. 1 in Case No: 1:22-cv-108. Hess sought dismissal of Sandy River's claims on September 6, 2022. See Doc. No. 11 in Case No. 1:22-cv-108. On February 7, 2023, the Court granted in part and denied in part the motion to dismiss. See Doc. No. 15 in Case No. 1:22-cv-108.

On December 6, 2023, the Court granted a motion to consolidate the cases. See Doc. No. 26. Among other things, the Plaintiffs allege Hess made untimely payments to the Plaintiffs and the members of a proposed subclass without paying 18% interest as required by N.D.C.C. § 47-16-39.1. Of the three subclass definitions contained in the Plaintiffs' consolidated interrogatories, only Subclass III is relevant to this motion. See Doc. No, 39-1, p. 3-4. The Plaintiffs define Subclass III as:

> All non-excluded persons or entities owning mineral interests in North Dakota wells who: (1) received an Untimely Payment from Hess for royalties associated with oil or gas produced from a Hess Well at any time since June 1, 2016; and (2) whose payments did not include the 18% interest required by statute.

> Excluded from the Class are: (1) overriding royalty interests and working interests; (2) Hess, its affiliates, predecessors, employees, officers, and directors; (3) agencies, departments, or instrumentalities of the United States of America or the State of North Dakota; and (4) mineral interests which are owned or managed by the board of university and school lands.

Id.

On March 28, 2024, Hess filed a motion to strike class allegations. See Doc. No. 38. Hess requests the Court strike all portions of the complaints that seek certification of a subclass to recover statutory interest pursuant to N.D.C.C. § 47-16-39.1. The motion has been fully briefed and is ripe for consideration.

## II. **LEGAL DISCUSSION**

The Plaintiffs bring this class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Rule 23(a) sets forth the prerequisites to a class action. It provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A district court may grant a motion to strike class allegations prior to the filing of a motion for class certification when "it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting

3

such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." Donelson v. Ameriprise Fin. Servs., Inc., 999 F.3d 1080 (8th Cir. 2021) (internal quotation marks omitted). A class cannot be certified when it contains members who lack standing. Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1034 (8th Cir. 2010). Therefore, a class must "be defined in such a way that anyone within it would have standing." Id. "If members who lack the ability to bring a suit themselves are included in a class, the court lacks jurisdiction over their claims." Johannessohn v. Polaris Indus. Inc., 9 F.4th 981, 987 (8th Cir. 2021) (citations omitted).

The Plaintiffs argue Rule 12(g)(2) of the Federal Rules of Civil Procedure prohibits the Defendant from filing a motion to strike class allegations because the Defendant filed a motion to dismiss in both cases before consolidation. Rule 12(g)(2) provides, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Although Hess previously filed motions to dismiss, the Court may consider Hess's motion to strike class allegations at this stage. See Lunsford v. United States, 570 F.2d 221, 227 n.11 (8th Cir. 1977) (finding a district court may strike material from the pleadings on its own initiative and therefore has authority to consider a plaintiff's motion to strike that is filed outside the time limits established by Rule 12); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

The Plaintiffs also argue the Court should deny Hess's motion to strike to allow for discovery, which they contend will produce information necessary to determine the certifiability of the proposed subclass. The pleadings conclusively show Rule 23 requirements are not met in this case because the proposed class definition for the statutory interest subclass includes members

who lack standing, as discussed below. No amount of discovery will cure a class defined to include members without standing. This Court lacks jurisdiction over the claims of class members that lack standing. Thus, the Court must strike the statutory interest class allegations at this stage.

Hess contends the Plaintiffs' proposed statutory interest subclass fails to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Hess argues some members of the subclass lack standing and the claims require an individual examination of each proposed class member. The Plaintiffs argue extensive individualized inquiries are not necessary for the subclass's claim. In support of its argument, Hess cites to two recent orders by this Court that struck substantively similar class allegations. In *Hystad Ceynar Mins., LLC v. Whiting Oil & Gas Corp.*, the Court concluded a subclass seeking interest under Section 47-16-39.1 could not satisfy Rule 23's typicality and predominance requirements. 2023 WL 3467461 (D.N.D. May 15, 2023). In *Colton v. Lime Rock Res. GP V, L.P.*, the Court determined it lacked jurisdiction because the class definition included class members that lacked standing. 2024 WL 1637480 (D.N.D. Apr. 16, 2024). In this case, the Plaintiffs' statutory interest class allegations present similar typicality and predominance issues as the subclass in *Hystad*. Like in *Colton*, some members in the subclass lack standing because the class was defined without regard for the statutory safe harbor provisions of Section 47-16-39.1. The Plaintiffs do not distinguish their cases from *Hystad* and *Colton*. Rather, they argue the Court erroneously struck those class allegations. Based on the pleadings in this case and the relevant case law, the Court finds no reason to depart from its recent rulings.

### A. STANDING

The Plaintiffs bring this case on behalf of themselves and proposed class members pursuant to N.D.C.C. § 47-16-39.1, which governs the obligation of an operator arising under an oil and gas

lease to pay royalties to mineral owners and mineral owner's assignees. N.D.C.C. § 47-16-39.1 provides:

> If the operator under an oil and gas lease fails to pay oil or gas royalties to the mineral owner or the mineral owner's assignee within one hundred fifty days after oil or gas produced under the lease is marketed and cancellation of the lease is not sought or if the operator fails to pay oil or gas royalties to an unleased mineral interest owner within one hundred fifty days after oil or gas production is marketed from the unleased mineral interest owner's mineral interest, the operator thereafter shall pay interest on the unpaid royalties, without the requirement that the mineral owner or the mineral owner's assignee request the payment of interest, at the rate of eighteen percent per annum until paid…This section does not apply if mineral owners or their assignees elect to take their proportionate share of production in kind, in the event of a dispute of title existing that would affect distribution of royalty payments, or if a mineral owner cannot be located after reasonable inquiry by the operator; however, the operator shall make royalty payments to those mineral owners whose title and ownership interest is not in dispute.

N.D.C.C. § 47-16-39.1(1).

The Plaintiffs' proposed class definition contains class members that lack standing. The class definition includes all owners who have received payments more than 150 days after the oil or gas was produced and marketed, regardless of the reasoning for the delayed or suspended payments. The class definition fails to account for the safe harbor provisions in Section 47-16-39.1, which provide that penalty interest does not accrue under certain circumstances. The statute does not apply: 1) if mineral owners or their assignees elect to take their proportionate share of production in kind; 2) in the event of a dispute of title existing that would affect distribution of royalty payments; or 3) if a mineral owner cannot be located after reasonable inquiry by the operator. N.D.C.C. § 47-16-39.1(1). By including "all persons or entities" to whom Hess has not remitted royalties within 150 days, the Plaintiffs' class definition necessarily includes class members whose payments were lawfully suspended due to safe harbor provisions. Such owners have not suffered any compensable injury under Section 47-16-39.1. In their response in opposition to the motion to strike class allegations, the Plaintiffs acknowledge that the safe harbor

provisions may be applicable to some class members. See Doc. No. 42, p. 11. Because the class definition includes class members that lack standing, the Court lacks jurisdiction over the statutory interest claim. Accordingly, the Court grants the Defendant's motion to strike the statutory interest class allegations.

### B.     TYPICALITY

Even if all class members had standing, the Plaintiffs' statutory interest subclass does not satisfy Rule 23 as a matter of law. Under Rule 23(a)(3), the claims of the representative parties must be typical of the claims of the class. "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977). However, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." Elizabeth M. v. Montenez, 458 F.3d 779, 787 (8th Cir. 2006).

In *Nudell v. Burlington N. and Santa Fe Ry. Co.*, 2002 WL 1543725 (D.N.D. July 11, 2002), the court determined the proposed class and subclass lacked typicality when considering a motion for class certification. The court expressed concerns about the proposed class definitions:

> Most fundamentally, it is difficult to understand how the Court could determine whether a potential class member is in fact a class member without an individualized inquiry. To the contrary, the current class definition would require several factual determinations as to each potential class member. As a threshold matter, each claimant would have to establish that he or she owned land described in the definition … The essential questions here, as stated above, concern property rights. Specifically, the case would require resolution of several property-related issues: the extent of the railroads interest in the land at issue; the extent of each property owners interest; whether the defendants activities regarding laying of fiber optic cable exceeded the scope of the railroads interest vis-a-vis that of the class members; whether any legal defenses exist to bar the claim of each class member, such as consent, acquiescence, or the statute of limitations; and, finally, assuming the claims are legitimate and proven, whether and how much damages are due. The

Court concludes that these decisions turn on so many individual questions that the claims of the named plaintiffs are not typical of the class.

Nudell, 2002 WL 1543725, at *1-5 (D.N.D. July 11, 2002). When comparing the class definition to *Nudell*, the Court in *Hystad* found:

> While Hystad's proposed class concerns persons and entities owning mineral interests in wells, rather than railroad interests, individual questions as to each class member remain. Examining each proposed class member's claim would require verification of the ownership interests and a review of their lease with Whiting to determine whether the member holds the interest required to fall within N.D.C.C. § 47-16-39.1.

Hystad, 2023 WL 3467461, at *4.

The Plaintiffs' proposed definition in this case presents similar problems as the classes in *Nudell* and *Hystad*. Each proposed class member's claim would require verification of ownership interest and a review of their lease with Hess to determine whether the member holds the interest required to fall within N.D.C.C. § 47-16-39.1. Additionally, the Plaintiffs' proposed class would require an inquiry for every class member to determine whether any safe harbor provisions apply. If a safe harbor provision applies, the proposed class member would not have a claim under N.D.C.C. § 47-16-39.1 for statutory interest. The North Dakota Supreme Court's decision in *Powell v. Statoil Oil & Gas LP*, adds another individual inquiry regarding the dispute of title safe harbor provision. 2023 ND 235, 999 N.W.2d 203, reh'g denied (Jan. 18, 2024). Before an operator may suspend the payment of royalties under the dispute of title safe harbor provision, the operator must provide notice to the mineral owner of a dispute affecting disruption of royalties. Id. at ¶ 17. When an operator fails to provide notice, the operator must pay statutory interest under N.D.C.C. § 47-16-39.1 on otherwise untimely payments. Id. The court's holding in *Powell* requires an individual inquiry into whether the operator properly notified the mineral owner when late payments involved a title dispute. Finally, in addition to the aforementioned individual inquires, if

8

proposed class members' claims are legitimate and proven, damages must be calculated separately for every class member because the interest due to each class member will vary based on when they received the late payments, how much in royalties were due, and whether one of the safe harbor provisions applied for some, but not all, of the time royalties were suspended (e.g. a title dispute resolved partway through the suspense period). These inherently individualized determinations make the Plaintiffs' claims atypical of those of other class members. The Plaintiffs contend the safe harbor provisions and the need to verify class members' property interests do not defeat the requirements of Rule 23 because members can be identified through discovery. Even if the class members are ascertainable through discovery, the class lacks typicality because of the necessary individual inquiries.

The Plaintiffs argue that the safe harbor provisions are a defense to the statutory interest claims. They contend typicality is not defeated by safe harbor provisions because typicality primarily hinges on class members' similar grievances rather than similar defenses a defendant has to a claim. The Plaintiffs misconstrue the effect of the safe harbor provisions. Section 47-16-39.1 states, "**[t]his section does not apply** if mineral owners or their assignees elect to take their proportionate share of production in kind, in the event of a dispute of title existing that would affect distribution of royalty payments, or if a mineral owner cannot be located after reasonable inquiry by the operator." N.D.C.C. § 47-16-39.1(1) (emphasis added). The safe harbor provisions are not defenses for the statute. Instead, when a safe harbor provision applies to a mineral owner, the provision renders the statute inapplicable. Therefore, such owners would not have a grievance against the operator under N.D.C.C. § 47-16-39.1. The failure to exclude class members whose payments were lawfully suspended due to safe harbor provisions defeats the typicality requirement of Rule 23(a)(3). Such class members would not have a claim based on the same legal theory as

the Plaintiffs because they would not have a claim for statutory interest under N.D.C.C. § 47-16-39.1. The Court concludes the proposed class does not meet the Rule 23(a)(3) typicality requirement.

### C. PREDOMINANCE

The Plaintiffs bring this class action pursuant to Rule 23(b)(3), which provides that a class action may be maintained if Rule 23(a) is satisfied and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The statutory interest subclass fails to meet the predominance requirement of Rule 23(b)(3).

In *Ebert v. General Mills*, 823 F.3d 472 (8th Cir. 2016) the Eighth Circuit Court of Appeals addressed the predominance requirement of Rule 23(b)(3). "Rule 23(b)(3) is qualitative rather than quantitative. Thus, that there is a common question does not end the inquiry." Id. at 478. "The requirement of predominance under Rule 23(b)(3) is not satisfied if 'individual questions ... overwhelm the questions common to the class.'" Id. at 478-79 (citing to Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455 (2013)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Id. at 479 (internal quotation marks omitted). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation and goes to the efficiency of a class action as an alternative to individual suits." Id. (citations omitted).

10

The Court's holdings regarding the required individualized determinations that preclude a finding a typicality also preclude a finding of predominance under Rule 23(b)(3). The verification of leases and ownership interests, the determinations of the existence of safe harbor provisions, and the determinations of proper notice regarding title disputes are individual questions that would require each proposed class member to present evidence. An individual inquiry into every class member would be time-consuming and inefficient. The individualized issues in this case predominate over the common claim for relief by the proposed class. Accordingly, the Court grants the Defendant's motion to strike the statutory interest class allegations.

D.  **ASCERTAINABILITY**

The Plaintiffs argue the Court misapplied Rule 23's requirements in *Hystad* and *Colton* by omitting discussion of the rule's ascertainability requirement. The Eighth Circuit Court of Appeals has recognized an "implicit requirement that a class must be adequately defined and clearly ascertainable." McKeage v. TMBC, LLC, 847 F.3d 992, 998 (8th Cir. 2017) (internal quotation marks and citations omitted). The implicit ascertainability requirement is an additional requirement of Rule 23. It does not replace the explicit typicality and predominance requirements contained in Rule 23. See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc., 821 F.3d 992, (8th Cir. 2016) (analyzing implicit ascertainability separately from the predominance requirements in Rule 23). Accordingly, even if the Plaintiffs' subclass is ascertainable, the subclass still does not satisfy Rule 23 because of the failure to meet the typicality and predominance requirements.

### III.  CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendant's motion to strike class allegations (Doc. No. 38) is **GRANTED**. The motions for hearing (Doc. Nos. 43 and 45) are **DENIED**.

**IT IS SO ORDERED.**

Dated this 13th day of August, 2024.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court