**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION**

| | | |
|---|---|---|
| **RONALD PENMAN and ADELANTE OIL & GAS, LLC, on behalf of themselves and a Class of similarly situated royalty owners,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 1:22-cv-00097** |
| v. | ) ) | **(Lead Case)** |
| **HESS BAKKEN INVESTMENTS II, LLC,** | ) ) ) | |
| **Defendant.** | ) ) | |
| **SANDY RIVER RESOURCES, LLC and SANDY RIVER ENERGY, LLC on behalf of themselves and classes of similarly situated royalty owners,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 1:22-cv-00108** |
| v. | ) ) | |
| **HESS BAKKEN INVESTMENTS II, LLC,** | ) ) ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT HESS BAKKEN INVESTMENTS II, LLC'S MOTION TO STRIKE GAS ROYALTY CLASS ALLEGATIONS**

Plaintiffs seek to certify two sub-classes in this case: (1) a sub-class that alleges that Defendant Hess Bakken Investments II, LLC ("Hess") deducted the negative value of excess natural gas expenses against royalties attributable to the production of oil; and (2) a sub-class that alleges that the post-production costs that Hess incurs related to its oil production are unreasonably high. While Hess does not believe that either class should be certified, sub-class

(1) is deficient as a matter of law, as this Court recently held in a similar case. *Colton v. Lime Rock Res. GP V, L.P.*, 2025 WL 2061692 (D.N.D. July 23, 2025) (Hovland, J.) ("*Colton II*"). Accordingly, Hess respectfully moves, pursuant to Federal Rules of Civil Procedure 12(c), 12(f), and 23(d)(1)(D), to strike all portions of the First Amended Complaint filed in *Penman v. Hess* and the Complaint filed in *Sandy River v. Hess* that seek certification of sub-class (1), as described above.

This Court can and should strike sub-class (1) now. In fact, this Court has twice stricken a near-identical subclass on the pleadings because it could not satisfy Rule 23's typicality and predominance requirements as a matter of law. *See Colton v. Lime Rock Res. GP V, L.P.*, 2024 WL 1637480 (D.N.D. Apr. 16, 2024) (Hovland, J.) ("*Colton I*"); *Colton II*. As in *Colton I* and *II*, Plaintiffs here assert a breach of contract claim on behalf of a proposed class, but do not limit their class to specific contractual language in the royalty owners' leases. Absent common contractual language, Plaintiffs' claims are not typical of all class members and common issues do not predominate.

## BACKGROUND

### A.   Plaintiffs Allege a Negative-Royalty Subclass.

Plaintiffs have royalty and overriding royalty interests in oil and gas produced from wells Hess operates in North Dakota. On June 10, 2022, the *Penman* Plaintiffs initiated a putative class action against Hess, and on June 22, 2022, the *Penman* Plaintiffs filed their First Amended Complaint. *Penman v. Hess Bakken Inv. II, LLC*, No. 1:22-cv-00097, ECF Nos. 1, 3. On June 28, 2022, the *Sandy River* Plaintiffs also filed a putative class action Complaint against Hess. *Sandy River Res., LLC v. Hess Bakken Inv. II, LLC*, No. 1:22-cv-00108, ECF No. 1. On February 28, 2023, and April 13, 2023, Hess answered both operative complaints. *Sandy River*,

ECF No. 18; *Penman*, ECF No. 20.  On December 6, 2023, the Court consolidated the *Penman* and *Sandy River* actions for all purposes.  Order, *Penman*, ECF No. 26.

Among other claims, Plaintiffs allege Hess breached their leases and overriding royalty agreements by deducting gas post-production costs that exceeded gas revenues from royalties for oil sales.  *Penman* Am. Compl. ¶¶ 47-48; *Sandy River* Compl. ¶¶ 51-52, 55, 57.  Plaintiffs refer to these deductions as negative gas royalties.  Plaintiffs seek to certify a subclass of similarly situated royalty owners under Rule 23(b)(3).  *Penman* Am. Compl. ¶¶ 35, 50-55, *Sandy River* Compl. ¶¶ 57-60, (Prayer for Relief).

Although the definitions are worded differently, both of Plaintiffs' proposed negative gas royalty subclasses effectively include all royalty owners that allegedly received a negative gas royalty.  The definitions do not limit the proposed subclasses to royalty owners who have the same language in their lease, contract, assignment, or other royalty instrument that Hess allegedly breached.  The *Penman* Plaintiffs define their negative gas royalty subclass—Subclass III—as:

> All persons to whom Hess has paid or was obligated to pay royalties on oil or natural gas produced from wells located in the State of North Dakota since May 2012 pursuant to *an oil and gas lease or overriding royalty agreement* where Hess's post-production expenses for gas were deducted from a royalty owner's oil royalties.
>
> Excluded from Subclass III are: (a) the United States; (b) any person who has been a working interest owner in a well located in North Dakota on whose behalf Hess has paid royalties on oil or natural gas produced by Hess in North Dakota; and (c) Hess and its affiliated entities, and their respective employees, officers, and directors.

*Penman* Am. Compl. ¶ 7 (emphasis added).  The *Sandy River* Plaintiffs define their negative gas royalty subclass—Subclass II—as:

> All persons and entities to whom Hess has paid royalties, including into suspense accounts, on oil and gas produced from wells located in the State of North Dakota

3

> since June 2012, where Hess has paid a gas royalty in an amount which was negative.
>
> Excluded from the class are: (1) the United States; (2) any working interests in a well located in the State of North Dakota held by any person or entity who has received oil royalties from Hess; and (3) Hess and its affiliated entities, and their respective employees, officers, and directors.

*Sandy River* Compl. ¶ 7.

On February 7, 2024, Plaintiffs' consolidated discovery requests to Hess put forth a new definition of the "Gas Subclass." Again, the proposed subclass is not limited to royalty owners with particular contractual language in their royalty instrument. Instead, it includes:

> All mineral owners and overriding royalty holders or their successors-in-interest to whom Hess has paid or was obligated to pay royalties on oil and natural gas produced from wells located in the State of North Dakota since May 2012 pursuant to *an oil and gas lease or overriding royalty agreement* where Hess has deducted post-production costs related to its gas production, or administrative costs, from mineral owners' or overriding royalty holders' royalties.
>
> Excluded from Subclass II are: (a) the United States; and (b) any person who has been a working interest owner in a well located in North Dakota on whose behalf Hess has paid royalties on oil or natural gas produced by Hess in North Dakota; and (c) Hess and its affiliated entities, and their respective employees, officers, and directors.

*See Penman*, ECF Nos. 39-1 (Ex. 1), 39-2 (Ex. 2) (emphasis added).

### B. The Court Strikes a Negative-Royalty Subclass in *Colton I*.

On April 16, 2024, this Court decided *Colton I*. There, plaintiff Greg B. Colton, who was represented by some of the same counsel for Plaintiffs in this action, alleged that Lime Rock Resources "improperly reduced royalties owed to Colton and the class members of Subclass II by offsetting the negative value of excess natural gas expenses against royalties attributable to the production of oil." 2024 WL 1637480, at *1. As here, Colton proposed a negative gas royalty subclass that was not limited to royalty owners with particular language in their leases or other royalty instrument:

4

> All persons and entities to whom Lime Rock has paid or was obligated to pay royalties on oil or natural gas produced from wells located in the State of North Dakota since March 20, 2013 pursuant to *an oil and gas lease or overriding royalty agreement* where Lime Rock's post-production expenses for gas were deducted from a royalty owner's oil royalties.

*Id*. (emphasis added). Lime Rock moved to partially dismiss the complaint and strike the class allegations. *See id.* at *2. This Court granted Lime Rock's motion to strike, concluding that Colton's proposed class would require "necessary individualized determinations"—including "verification of [each owner's] titles and a review of the proposed class member's lease," and separately calculating damages "for every class member"—that meant that the proposed class could not satisfy either Rule 23(a)(3)'s typicality requirement or Rule 23(b)(3)'s predominance requirement as a matter of law. *Id.* at *6.

    C.    **The Court Strikes a Negative-Royalty Subclass Again in *Colton II*.**

On July 23, 2025, this Court issued its second opinion striking a negative gas royalty subclass, *Colton II*. Colton's amended complaint slightly modified Colton's prior class definition, but failed to limit the class to royalty owners with specific language in their royalty instrument. Again, the Court struck Colton's class allegations because the proposed class still was not limited to royalty owners with particular language in their royalty instrument, and thus still failed Rule 23's predominance and typicality requirements as a matter of law. *Colton II*, 2025 WL 2061692, at *6.

The class allegations the Court struck twice in *Colton* are substantially similar to the ones in *Penman* and *Sandy River* Plaintiffs' claimed subclasses. Hess therefore moves to strike Plaintiffs' negative gas royalty subclass allegations as a matter of law.

**LEGAL STANDARD**

Several provisions of the Federal Rules permit this Court to strike class allegations after initial briefing on the pleadings. Under Rule 12(c), "[j]udgment on the pleadings is appropriate

5

where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004). Similarly, under Rule 12(f), the Court may strike class allegations from the pleadings if it is "apparent from the pleadings that the class cannot be certified." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) (citation omitted), *reh'g & reh'g en banc denied* (Jul. 13, 2021), *cert. denied*, 142 S. Ct. 2675 (2022). Because the Court "has the authority to strike material from the pleadings on its own initiative," courts may consider motions to strike filed after responsive pleadings. *Gordon v. State Farm Fire & Cas. Co.*, 2012 WL 3848409, at *1 (D. Minn. Aug. 17, 2012), *report and recommendation adopted*, 2012 WL 3854971 (D. Minn. Sept. 5, 2012); *Lunsford v. United States*, 570 F.2d 221, 227 n.11 (8th Cir. 1977); *see also* Fed. R. Civ. P. 12(f)(1) (stating that the court "may act … on its own" in striking matters from a pleading). Thus, even though a motion to dismiss has been filed, the Court may still consider a "motion to strike class allegations at this stage." *Penman v. Hess Bakken Invs. II, LLC*, 2024 WL 3792011, at *2 (D.N.D. Aug. 13, 2024) (Hovland, J.).

Likewise, because Rule 23 also requires courts to rule on certification "[a]t an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), "a district court may grant a motion to strike class-action allegations prior to the filing of a motion for class-action certification," *Donelson*, 999 F.3d at 1092. To certify a class, plaintiffs must satisfy Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Fed. R. Civ. P. 23(a). Plaintiffs must also satisfy Rule 23(b)(3)'s demands that "the questions of law or fact common to class members predominate" over individual questions, and that a class action is a "superior" way to "fairly and efficiently adjudicate[e] the controversy." *Colton I*, 2024 WL 1637480, at *6 (quoting Fed. R. Civ. P. 23(b)(3)).

6

**ARGUMENT**

Plaintiffs' proposed negative gas royalty subclass cannot satisfy Rule 23 as a matter of law. Plaintiffs assert a breach of contract claim on a class-wide basis, but do not identify what common contractual language is at issue. As this Court has twice explained in striking a similar putative subclass, Plaintiffs' claims are not typical of the class they seek to represent, and common questions of law and fact do not predominate when the proposed class is not limited to individuals with the same operative language in their contracts. *See Colton II*, 2025 WL 2061692, at *6. As in *Colton II*, "the individualized inquiry necessary to review and interpret every lease for every class member precludes typicality," and the subclass "lacks the cohesion necessary to warrant class certification" under Rule 23(b)(3)'s even more demanding predominance requirement. *Id.* Just as it did in *Colton I* and *Colton II*, the Court should strike the negative gas royalty class allegations.

**I.   PLAINTIFFS' NEGATIVE GAS ROYALTY SUBCLASS CANNOT SATISFY RULE 23(A)(3)'S TYPICALITY REQUIREMENT.**

Plaintiffs' negative gas royalty subclass cannot satisfy Rule 23(a)(3)'s typicality requirement. Plaintiffs' subclass "definition is … not tied to any particular lease language," and requires an "individualized inquiry … to review and interpret every lease for every class member." *Id.*

To maintain a class action, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Eighth Circuit has been clear that "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006). Yet to assess whether there has been a breach of contract, "the language of a contract is to govern if the language is clear." *Colton II*, 2025 WL 2061692, at *6. Thus, when asserting

7

a breach of contract, class actions cannot "advance a single collective breach of contract action on the basis of multiple different contracts." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998).

Plaintiffs seek to do here exactly what this Court did not permit in *Colton*. As in *Colton*, Plaintiffs' negative gas royalty subclass is not limited to any particular lease or royalty agreement language. Instead, it includes all "mineral owners and overriding royalty holders or their successors-in-interest to whom Hess has paid or was obligated to pay royalties … pursuant to *an oil and gas lease or overriding royalty agreement*." See *Penman*, ECF Nos. 39-1 (Ex. 1), 39-2 (Ex. 2) (emphasis added). That generic language cannot sustain a class. "Royalty provisions of oil and gas leases vary greatly in detail." 3 Williams & Meyers, Oil and Gas Law § 641 (2025); *see also Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 271 (D.N.M. 2016) ("[T]he leases do not all share the same [royalty] language .... Because the language's meaning could materially differ between categories, the variations require individual consideration."). Likewise, Plaintiffs' proposed subclass includes overriding royalty interests, which also vary significantly based on the language and instruments at issue.[1] *See Highline Expl., Inc. v. QEP Energy Co.*, 43 F.4th 813, 817 (8th Cir. 2022) ("[T]he parties did not create a standard ORRI. The language in the assignments creates a more specific interest than a typical ORRI."); *see also Abraham*, 317 F.R.D. at 195 (recognizing that overriding royalty interests are often bespoke interests "created in individualized circumstances and business transactions" and are "not created through the use of form contracts"). ‼

---

[1] "An overriding royalty interest is carved out of the working interest created by an oil and gas lease and gives its owner a right to a share of production." *Sandy River Res., LLC v. Hess Bakken Invs. II, LLC*, 2023 WL 1801958, at *2 (D.N.D. Feb. 7, 2023) (Hovland, J.).

Here, "[e]xamining each proposed class member's claim would require individual verification of titles and a review of the proposed class member's lease" to assess whether or not Hess has in fact breached the operative lease language. *Colton I*, 2024 WL 1637480, at *6. The "inherent variability" in the language of the leases and overriding royalty agreements "highlights the lack of typicality." *Colton II*, 2025 WL 2061692, at *6. Because Plaintiffs do not point to "common contractual language," their claims are not "not typical of the class" they seek to represent. *Id.* Lastly, as the Court noted in *Colton I*, even "if claims are legitimate and proven, damages must be separately calculated for every class member." 2024 WL 1637480, at *6. "These necessary individualized determinations" also defeat typicality as a matter of law. *Id.*

## II. PLAINTIFFS' NEGATIVE GAS ROYALTY SUBCLASS CANNOT SATISFY RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT.

In addition to failing Rule 23(a)(3)'s typicality requirement, Plaintiffs' proposed class also cannot satisfy Rule 23(b)(3)'s predominance requirement. Rule 23(b)(3) provides that a class action may be maintained if Rule 23(a) is satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement "is not satisfied if 'individual questions ... overwhelm the questions common to the class.'" *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478-79 (8th Cir. 2016) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013)).

This requirement "is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Thus, as this Court has repeatedly held, the "required individualized determinations that preclude a finding of typicality also preclude a finding of predominance under Rule 23(b)(3)." *Hystad Ceynar Min., LLC v. XTO Energy, Inc.*, 2025 WL 522550, at *5

9

(D.N.D. Feb. 18, 2025) (granting motion to strike class allegations); *Penman*, 2024 WL 3792011, at *5.

Here, Plaintiffs "did not narrow" the subclass "to any specific contract language that is common to all leases pertaining to the class." *Colton I*, 2024 WL 1637480, at *7. As such, to determine "whether the language creates the necessary type of obligation to meet the class definition," the Court would have "to review and interpret every contract" because "the substance of any royalty obligation arises from" the specific language in each lease and/or overriding royalty agreement, which can come in "countless variations." *Colton II*, 2025 WL 2061692, at *6. This "would require each member of the proposed class to present evidence regarding their lease." *Colton I*, 2024 WL 1637480, at *7. Again, given Plaintiffs' failure to tether their proposed class claims to any specific lease or overriding royalty language, the "individualized issues in this case predominate over the common claim for relief by the proposed class," and the "proposed class lacks the cohesion necessary to warrant class certification." *Id.* As such, Plaintiffs' subclass cannot be certified as a matter of law.

## CONCLUSION

For the foregoing reasons, Hess respectfully requests that the Court strike all allegations seeking to certify a negative gas royalty subclass as described above.

Dated: August 11, 2025                                  Respectfully submitted,

                                                        */s/ Ragan Naresh*
                                                        Paul J. Forster (ND ID #07398)
                                                        Zachary R. Eiken (ND ID #07832)
                                                        CROWLEY FLECK PLLP
                                                        100 W. Broadway, Suite 250
                                                        P.O. Box 2798
                                                        Bismarck, ND 58502-2798
                                                        (701) 224-7546
                                                        (701) 222-4853
                                                        pforster@crowleyfleck.com
                                                        zeiken@crowleyfleck.com

                                                        Daniel T. Donovan, P.C.
                                                        Ragan Naresh, P.C.
                                                        K. Ross Powell
                                                        Gabrielle Durling
                                                        KIRKLAND & ELLIS LLP
                                                        1301 Pennsylvania Avenue, NW
                                                        Washington, DC 20004
                                                        (202) 389-5000
                                                        (202) 389-5200
                                                        daniel.donovan@kirkland.com
                                                        ragan.naresh@kirkland.com
                                                        ross.powell@kirkland.com
                                                        gabi.durling@kirkland.com

## **CERTIFICATE OF SERVICE**

     I, Ragan Naresh, hereby certify that the foregoing was served on counsel of record via the ECF filing system on the date below.

Dated: August 11, 2025                          Respectfully submitted,

                                                       */s/ Ragan Naresh*
                                                       Ragan Naresh, P.C.