# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Ronald Penman and<br>Adelante Oil & Gas, LLC,<br>on behalf of themselves and a class of<br>similarly situated royalty owners,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>Hess Bakken Investments II, LLC,<br><br>　　　　　Defendant. | **ORDER GRANTING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Case No. 1:22-cv-097 |
| Sandy River Resources, LLC, and<br>Sandy River Energy, LLC,<br>on behalf of themselves and classes of<br>similarly situated royalty owners,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>Hess Bakken Investments II, LLC,<br><br>　　　　　Defendant. | Case No. 1:22-cv-108 |

Before the Court is the Defendant's motion to strike class allegations filed on August 11, 2025. See Doc. No. 87. The Plaintiffs filed a response in opposition to the motion on September 12, 2025. See Doc. No. 95. The Defendant filed a reply on September 23, 2025. See Doc. No. 98. The Plaintiffs filed a sur-reply on September 25, 2025. See Doc. No. 100-1. The Defendant filed a response to the Plaintiffs' sur-reply on October 3, 2025. See Doc. No. 109-1. For the reasons set forth below, the motion to strike class allegations is granted.

1

I.      **BACKGROUND**

The Defendant, Hess Bakken Investments II, LLC, ("Hess"), operates numerous oil and gas wells in North Dakota. As the operator of those wells, Hess produces and markets oil, gas, and related hydrocarbons. Hess then remits sales proceeds to parties who own interests in a given well, including royalty owners who are entitled to a share of production under an oil and gas lease. The Plaintiffs own interests in oil and gas produced from wells Hess operates in North Dakota.

On June 10, 2022, Ronald Penman brought an action on behalf of himself and a class of similarly situated royalty owners. See Doc. No. 1. Penman filed an amended complaint on June 22, 2022, adding Adelante Oil & Gas, LLC as a Plaintiff. See Doc. No. 3. Hess filed a motion to dismiss Penman and Adelante Oil & Gas, LLC's (collectively "Penman") claims on August 4, 2022. See Doc. No. 7. The motion was denied on March 23, 2023. See Doc. No. 11. On June 28, 2022, Sandy River Resources, LLC and Sandy River Energy, LLC (collectively "Sandy River"), brought an action on behalf of themselves and a class of similarly situated royalty owners. See Doc. No. 1 in Case No: 1:22-cv-108. Hess sought dismissal of Sandy River's claims on September 6, 2022. See Doc. No. 11 in Case No. 1:22-cv-108. On February 7, 2023, the Court granted in part and denied in part the motion to dismiss. See Doc. No. 15 in Case No. 1:22-cv-108. On December 6, 2023, the Court granted a motion to consolidate the cases. See Doc. No. 26.

Among other claims, the Plaintiffs allege Hess breached class members' leases and overriding royalty agreements by deducting gas post-production costs that exceeded gas revenues from royalties for oil sales. The Plaintiffs refer to these deductions as "negative gas royalties." The Plaintiffs seek to certify a subclass of similarly situated royalty owners. Although the Plaintiffs' subclass definitions are worded differently in each compliant, the substance is the same. The

proposed subclasses include royalty owners that allegedly received a negative gas royalty. Penman defines their negative gas royalty subclass, Subclass III, as:

> All persons to whom Hess has paid or was obligated to pay royalties on oil or natural gas produced from wells located in the State of North Dakota since May 2012 pursuant to an oil and gas lease or overriding royalty agreement where Hess's post-production expenses for gas were deducted from a royalty owner's oil royalties.
>
> Excluded from Subclass III are: (a) the United States; (b) any person who has been a working interest owner in a well located in North Dakota on whose behalf Hess has paid royalties on oil or natural gas produced by Hess in North Dakota; and (c) Hess and its affiliated entities, and their respective employees, officers, and directors.

See Doc. No. 3, p. 3. Sandy River defines their negative gas royalty subclass, Subclass II, as:

> All persons and entities to whom Hess has paid royalties, including into suspense accounts, on oil and gas produced from wells located in the State of North Dakota since June 2012, where Hess has paid a gas royalty in an amount which was negative.
>
> Excluded from the class are: (1) the United States; (2) any working interests in a well located in the State of North Dakota held by any person or entity who has received oil royalties from Hess; and (3) Hess and its affiliated entities, and their respective employees, officers, and directors.

See Doc. No. 1, p. 3 in Case No. 1:22-cv-108. The sole claim Penman and Sandy River bring on behalf of their negative gas royalty class is a breach of contract claim. On February 7, 2024, the Plaintiffs defined the combined putative class definition ("negative gas royalty class") in their consolidated discovery as:

> All mineral owners and overriding royalty holders or their successors-in-interest to whom Hess has paid or was obligated to pay royalties on oil and natural gas produced from wells located in the State of North Dakota since May 2012 pursuant to an oil and gas lease or overriding royalty agreement where Hess has deducted post-production costs related to its gas production, or administrative costs, from mineral owners' or overriding royalty holders' royalties.
>
> Excluded from Subclass II are: (a) the United States; and (b) any person who has been a working interest owner in a well located in North Dakota on whose behalf

3

>  Hess has paid royalties on oil or natural gas produced by Hess in North Dakota; and
>  (c) Hess and its affiliated entities, and their respective employees, officers, and directors.

See Doc. Nos. 39-1, p. 3.

On August 11, 2025, Hess filed a motion to strike class allegations. See Doc. No. 87. Hess requests the Court strike all portions of the complaints that seek certification of the negative gas royalty class that alleges Hess breached leases and overriding royalty agreements by deducting gas post-production costs that exceeded gas revenues from royalites for oil sales. The motion has been fully briefed and is ripe for consideration.

### III.   LEGAL DISCUSSION

#### A.   NEW THEORIES OF LIABILITY

This Court previously struck a near-identical subclass on the pleadings because it could not satisfy Rule 23's typicality and predominance requirements. The negative gas royalty class in this case presents the same issues. The Plaintiffs attempt to evade the class certification issues by asserting new theories of liability that were not pled in their complaints. First, the Plaintiffs' claims are limited to their pleadings. The Court may not consider the Plaintiffs' unpled theories. Second, even if the Court could consider the Plaintiffs' unpled theories, the theories are legally deficient.

The Plaintiffs' sole claim as to the negative gas royalty class is breach of contract. In the complaints, the Plaintiffs allege Hess breached class members' oil and gas leases or overriding royalty agreements by deducting post-production expenses from royalty owners' oil royalties. The Plaintiffs now argue a new theory for why Hess cannot deduct negative gas royalties. In their response in opposition to the motion, the Plaintiffs argue for the first time that their negative gas royalty claims are based on Hess' alleged failure to follow its internal policies. The Plaintiffs assert

4

that Hess has an internal policy that royalty owners should not be charged negative amounts for each production month. The Plaintiffs contend that Hess' violation of this policy supports class certification. The Plaintiffs essentially abandoned their breach of contract claim in favor of this new theory of Hess' violation of their internal policy. Despite pleading a breach of contract claim, the Plaintiffs argue that "the duty to avoid negative royalites has absolutely nothing to do with lease provisions, but instead it arises from the nature of the relationship between working interests and royalty owners." See Doc. No. 95, p. 6.

      The Plaintiffs' new theory regarding Hess' alleged failure to follow its internal policy is not pled in their complaints. In the Sandry River complaint the Plaintiffs include a single paragraph that quotes testimony from Hess at a hearing before the North Dakota Finance and Taxation Committee. According to the complaint, Hess has a practice that "royalty owners do not go negative on the combined gas stream, thus preserving the full oil revenue." See Doc. No. 1 in Case No. 1:22-cv-108. This is the only reference to Hess' alleged internal policy in the Sandy River complaint. Notably, there is no reference to the internal policy in the Penman complaint. The Plaintiffs do not allege a violation of this policy in their complaints. Nor do the Plaintiffs allege that their leases and royalty agreements incorporate Hess' internal policy. The Plaintiffs do not relate this alleged policy to any claim they pled. The Plaintiffs' short factual statement regarding the policy in the Sandy River complaint does not constitute a claim or a legal theory. The Plaintiffs fail to explain how this factual statement bares relevance to the breach of contract claims.

      In the Plaintiffs' response they also argue the negative gas royalty class can be certified based on Hess' violation of North Dakota law on withholding taxes. The Plaintiffs claim Hess has a uniform practice of withholding taxes from royalties based on the gross price of gas, causing some royalty owners to go negative. The Plaintiffs' complaints are void of any factual allegations

5

or claims regarding Hess' violation of North Dakota law on withholding taxes. Further, the Plaintiff does not explain how this new legal theory is relevant to the negative gas royalty's breach of contract claims. The Plaintiffs cannot save their class by pleading new theories in their response in opposition to the Defendant's motion to strike class allegations. See Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ([I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") The Plaintiffs are limited to their pleadings. Accordingly, the Court cannot consider their new theories of liability raised in their response to the motion to strike. The only claims the Plaintiffs may advance are the breach of contract claims as pled in their complaints. The Court will consider only the allegations and claims contained in the complaints for the Defendant's motion to strike class allegations.

Even if the Court could consider the Plaintiffs' new legal theories, the theories do not support the breach of contract claims. The violation of the alleged internal policy is not relevant to the Plaintiffs' breach of contract claims. The Plaintiffs do not allege this internal policy is included in the class member' contracts. Nor do they allege the class members are even aware of the policy. The Plaintiffs solely argue class certification is proper because Hess violated an internal policy. They provide no explanation as to how this policy in any way affects the breach of contract claims. Rather, the Plaintiffs suggest the Court should disregard the contractual language of the leases and overriding royalty agreements to instead focus on the violation of the internal policy. The Plaintiffs argue "the contract language is inconsequential." See Doc. No. 95, p. 2.  The Plaintiffs frame the relevant issue in this case as whether Hess "adopt[ed] a uniform policy not to take royalty and overriding royalty owners negative on their combined gas stream, *regardless of the language in their leases*." Id. at p. 11-12 (emphasis added). The Court cannot ignore the contractual language when considering the Plaintiffs' breach of contract claims. North Dakota law provides that

6

language of a contract is to govern if the language is clear. See N.D.C.C. § 9-07-02. The Court finds the contractual language is highly relevant to the Plaintiffs' claims. The Plaintiffs' new allegation regarding Hess' violation of North Dakota law by withholding taxes is also irrelevant to their breach of contract claims. Accordingly, the Court rejects the Plaintiffs' arguments that Hess' violation of an internal policy and North Dakota tax law satisfies Rule 23's typicality and predominance requirements. As discussed below, the Plaintiffs' class allegations do not meet Rule 23's requirements.

### B.  RULE 23 REQUIREMENTS

Penman and Sandy River bring this class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.[1] Rule 23(a) sets forth the prerequisites to a class action. It provides:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, the Eighth Circuit Court of Appeals recognizes an implicit requirement of Rule 23 that "a class must be adequately defined and clearly ascertainable." McKeage v. TMBC, LLC, 847 F.3d 992, 998 (8th Cir. 2017) (internal quotation marks omitted).

---

[1] The Court's findings and conclusions regarding the Rule 23 requirements are equally applicable to Penman's subclass definition (Doc. No. 3, p. 3), Sandy River's subclass definition (Doc. No. 1, p. 3 in Case No. 1:22-cv-108), and the Plaintiffs' combined negative gas royalty subclass definition (Doc. No. 39-1, p. 3).

A district court may grant a motion to strike class allegations prior to the filing of a motion for class certification when "it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." Donelson v. Ameriprise Fin. Servs., Inc., 999 F.3d 1080 (8th Cir. 2021) (internal quotation marks omitted). A class cannot be certified when it contains members who lack standing. Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1034 (8th Cir. 2010). Therefore, a class must "be defined in such a way that anyone within it would have standing." Id. "If members who lack the ability to bring a suit themselves are included in a class, the court lacks jurisdiction over their claims." Johannessohn v. Polaris Indus. Inc., 9 F.4th 981, 987 (8th Cir. 2021) (citations omitted).

Hess contends the Plaintiffs' negative gas royalty class allegations fail to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Specifically, Hess argues the Plaintiffs cannot meet the typicality and predominance requirements because the proposed class definition would require an individual examination for each and every class member. The Plaintiff argues the proposed class definition meets all of Rule 23's requirements based on the new legal theories the Court rejected above.

Hess cites to recent orders by this Court that struck substantively similar class allegations. The Court concluded that nearly identical classes could not satisfy Rule 23's typicality and predominance requirements in *Colton v. Lime Rock Res. GP V, L.P.* ("*Colton I*"), No. 1:22-CV-123, 2024 WL 1637480 (D.N.D. Apr. 16, 2024) and *Colton v. Lime Rock Res. GP V, L.P.*, ("*Colton II*"), No. 1:22-CV-123, 2025 WL 2061692 (D.N.D. July 23, 2025). In *Colton I* and *Colton II* the plaintiff failed to narrow the class definition to any specific contractual language and did not

8

specify the contractual language the defendant allegedly breached. The Court found that the class allegations required an individual examination of each class member. Therefore, the class definition lacked the cohesion necessary to warrant class certification. Penman and Sandy Rivers' negative gas royalty class definition is substantively similar to the proposed definition that the Court struck in *Colton II*. The Plaintiffs' class allegations in this case present similar typicality and predominance issues. The negative gas royalty class requires extensive individual examinations for class members, which prevents class certification. Based on the pleadings in this case and the relevant case law, the Court finds no reason to depart from its recent rulings.

### 1.   **TYPICALITY**

Under Rule 23(a)(3), the claims of the representative must be typical of the claims of the class. "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977). However, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." Elizabeth M. v. Montenez, 458 F.3d 779, 787 (8th Cir. 2006).

The Plaintiffs assert a breach of contract claim for all class members. In their complaints, the Plaintiffs assert Hess breached its contractual obligations to class members under leases and overriding royalty agreements by paying class members a negative gas royalty. However, the Plaintiffs did not limit the negative gas royalty class definition to leases or agreements with the same or similar language. Notably, the Plaintiffs did not limit the definition to contracts that prohibit Hess from paying a negative gas royalty, despite the Plaintiffs' argument that the negative

gas royalty prohibition is the contractual obligation that was breached. The Plaintiffs argue that variations in lease language do not matter for purposes of class certification. The Court disagrees.

Under North Dakota law, the language of a contract is to govern if the language is clear. See N.D.C.C. § 9-07-02. There could be numerous variations of lease language in the class members' leases, which prevents a finding of typicality in the negative gas royalty class. The Plaintiffs cannot advance a collective breach of contract action on the basis of multiple different contracts. See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331 (4th Cir. 1998) (Multiple contract actions cannot be amalgamated into one because of the possibility that a breach occurred with some class members but not with others). The leases may vary greatly in detail. "Even slight variations in contract language could result in differing findings for [class members'] breach of contract claims." *Colton II*, 2025 WL 2061692 at *6. The inherent variability in the language of the leases and overriding royalty agreements necessitates an individual review of every class member's contract to assess whether the contract contains the operative language and, if so, whether Hess breached the operative language. The individualized inquiries necessary to review and interpret every lease for every class member precludes typicality. In the absence of common contractual language, the Plaintiffs' claims are not typical of the class they seek to represent. Further, as the Court noted in *Colton I*, even "if claims are legitimate and proven, damages must be separately calculated for every class member." 2024 WL 1637480 at *6. The Plaintiffs contend that the class members' grievances are identical because every class member suffered the same type of injury. The presence of a common injury alone is insufficient to establish typicality when proof of a claim requires individual inquiries. Therefore, the Court finds Rule 23(a)(3)'s typicality requirement is not met.

##    2.    **PREDOMINANCE**

Under Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The negative gas royalty class fails to meet the predominance requirement of Rule 23(b)(3).

The Eighth Circuit Court of Appeals addressed the predominance requirement of Rule 23(b)(3) in *Ebert v. General Mills*, 823 F.3d 472 (8th Cir. 2016). "Rule 23(b)(3) is qualitative rather than quantitative. Thus, that there is a common question does not end the inquiry." Id. at 478. "The requirement of predominance under Rule 23(b)(3) is not satisfied if 'individual questions ... overwhelm the questions common to the class.'" Id. at 478-79 (citing to Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455 (2013)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Id. at 479 (internal quotation marks omitted). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation and goes to the efficiency of a class action as an alternative to individual suits." Id. (citations omitted).

In *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010), the Eighth Circuit Court of Appeals concluded that the defendant's liability to the entire class for a breach of contract claim could not be established with common evidence. The existence of more than one reasonable interpretation of the contract "opens the door for extrinsic evidence about what each party intended when it entered the contact." Avritt, 615 F. 35 at 1030. In addition to extrinsic evidence about

intent, the parties may introduce evidence regarding how the contract was explained to class members and whether each class member's understanding of the contract was consistent with the theory the Plaintiffs' advanced.

In this case, Hess' liability to the entire class for its breach of contract cannot be established with common evidence. The substance of a royalty obligation arises from the lease language. The proposed class members' leases could involve countless variations. Consequently, the Court would need to review and interpret every contract to determine whether the language creates the necessary type of obligation to meet the class definition. Some contracts may require the resolution of ambiguities and a review of extrinsic evidence. The adjudication of the breach of contract claims would necessitate individual inquires and potential legal analyses for the more than 1,000 class members, some of whom may be paid under more than one lease. The individualized issues in this case predominate over the common claim for relief by the proposed class. The negative gas royalty class lacks the cohesion necessary to warrant class certification. Accordingly, the Court grants the Defendant's motion to strike the class allegations.

### III.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendant's motion to strike class allegations (Doc. No. 87) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 20th day of October, 2025.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court